# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

| | |
|---|---|
| William Morrison,<br><br>         Plaintiff,<br><br>v.<br><br>Norfolk Southern Railway Co.,<br><br>         Defendant. | Case No. _____<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMAND)** |

## PRELIMINARY STATEMENT

1. Plaintiff William Morrison suffers from depression and a high body mass index, which are causally related. After learning of Morrison's high body mass index, Defendant Norfolk Southern Railway Co. withdrew the job offer it had made to him. This case is about whether that withdrawal violates the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as amended.

## PARTIES

2. Norfolk Southern is a railroad carrier engaged in interstate and foreign commerce. It is headquartered in this division. Consequently, its human resources department, which is responsible for investigating complaints of disability discrimination, is based in this division; its law department, which is responsible for adopting policies regarding and training its manager's on disability discrimination, is based in this division; and its medical department, which is responsible for evaluating and accommodating its employees' disabilities, is based in this division.

3. Morrison resides in Virginia.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over Morrison's ADA claim under 28 U.S.C. § 1331.

5. Venue is proper in this division under 28 U.S.C. § 1391 because Norfolk Southern is headquartered and the illegal conduct occurred pursuant to policies and procedures that were promulgated by officers who reside in this division.

### NORFOLK SOUTHERN WITHDRAWS ITS JOB OFFER TO MORRISON

6. Morrison applied for a position with Norfolk Southern.

7. Norfolk Southern offered Morrison the position.

8. After a pre-employment physical, however, Norfolk Southern notified Morrison that it was withdrawing the offer, citing Morrison's high body mass index as the sole reason for such withdrawal.

9. The withdrawal letter was signed by Norfolk Southern's doctor, who resides in this division.

10. While Norfolk Southern claimed in its withdrawal letter that "during [his] examination, [Morrison] indicated that [he] did not have an underlying physiological condition that could cause obesity," Morrison made no such claim.

11. In fact, the opposite is true: Morrison suffers from depression, which is causally related to his high body mass index.

12. Morrison's depression is mental impairment that substantially limits his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

13. Morrison's high body mass index is a physical impairment that substantially limits his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

14. Norfolk Southern regarded Morrison's high body mass index as a physical or mental impairment that substantially limits his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

15. Neither his depression nor his high body mass index, however, prevents Morrison from performing the essential functions of the job he was offered.

16. Indeed, Morrison can perform each of the essential functions of the job he was offered.

17. Norfolk Southern's instead withdrew the job offer pursuant to a policy of not hiring employees with a high body mass index.

18. Norfolk Southern's policy of not hiring employees with a high body mass index arises from it being self-insured and believing that employees with a high body mass index suffer from sleep apnea, diabetes, and/or heart disease, and that employees with sleep apnea, diabetes, and/or heart disease are more likely to incur medical expenses.

19. Norfolk Southern's policy of not hiring employees with a high body mass index arises also from it believing that employees with a high body mass index suffer from sleep apnea, diabetes, and/or heart disease, and that employees with sleep apnea, diabetes, and/or heart disease are more likely to become incapacitated.

20. Sleep apnea is a physical impairment that substantially limits one's ability to care for him or herself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

21. Diabetes is a physical impairment that substantially limits one's ability to care for him or herself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work

22. Heart disease is a physical impairment that substantially limits one's ability to care for him or herself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work

23. Norfolk Southern regarded Morrison as having sleep apnea, diabetes, and/or heart disease, and it withdrew the job offer it had made to him because it was concerned his sleep apnea, diabetes, and/or heart disease would cause him to become incapacitated.

24. Norfolk Southern's policy was promulgated and is enforced by people who reside in this division.

25. Because a high body mass index is positively correlated related with disabilities, Norfolk Southern's policy disparately affects the disabled.

26. Norfolk Southern has engaged in pattern and practice of violating the ADA. *See*, *e.g.*, *EEOC v. Norfolk Southern Corp.*, No. 2:17-cv-1251 (W.D. Penn.).

27. Morrison filed a charge with the Equal Employment Opportunity Commission within 300 days of when Norfolk Southern withdrew the job offer.

28. Morrison filed this case within ninety days of when the Equal Employment Opportunity Commission issued a notice of right to sue.

## CAUSES OF ACTION

### VIOLATIONS OF 42 U.S.C. § 12101, *et seq*.

29. Norfolk Southern was Morrison's "employer" within the ADA's meaning.

30. Morrison is disabled within the ADA's meaning.

31. Morrison is a qualified individual within the ADA's meaning.

32. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

33. Section 12112(b)(3) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability".

34. Section 12112(b)(5)(A) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . ."

35. Section 12112(b)(6) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" as including "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity."

36. Norfolk Southern discriminated against Morrison on the basis of disability when it withdrew the job offer it had made to him.

37. Because Norfolk Southern violated 42 U.S.C. § 12112, Morrison has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Morrison is also entitled to attorneys' fees and costs incurred in connection with these claims.

38. Norfolk Southern committed the above-alleged facts with reckless disregard or deliberate disregard for Morrison's rights and safety. As a result, Morrison is entitled to punitive damages.

## **REQUEST FOR RELIEF**

39. Morrison requests that the Court find Norfolk Southern acted in direct violation of the ADA.

40. Morrison further requests that the Court order Norfolk Southern to:

- reinstate him;

- pay to him an award for compensatory damages arising from loss of income and benefits in an amount to be determined by the trier of fact;

- pay to him an award for garden-variety emotional distress in an amount to be determined by the trier of fact;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorneys' fees; and

- pay to him an award for $300,000 for punitive damages for each violation of the ADA.

41. Morrison further requests that the Court order judgment against Norfolk Southern for all other relief available under the ADA and such other relief as the Court deems just and equitable.

Dated: June 3, 2019

**THE MOODY LAW FIRM**

s/ *Nicholas D. Thompson*
Nicholas D. Thompson (VA # 92821)
500 Crawford St., #200
Portsmouth, VA 23704
Phone: (757) 399-8906
Fax: (757) 397-7257
nthompson@moodyrrlaw.com

**ATTORNEYS FOR PLAINTIFF**